Please be seated. Good morning. Next piece on the pocket is people in Illinois versus Christopher McDavid. We have, um, Rebecca McCormick for the appellant and we have, um, Mr Lawrence for the Applebee's. So you may proceed. Mr. McCormick. Your honors. The defendant was charged with first degree murder on March 3rd, 2013. Subsequently, the court granted the defendant's motion to suppress with respect to statements made during the second interview. There were two interviews. Um, this court's review gives deference to the court's factual findings below, but the ultimate issue of whether it should have been suppressed or not is renewed, is reviewed de novo. Um, the court, as I said, there were two interviews. The court found that the first interview was which took place at the defendant's residence was not subject to suppression, but found that the second interview was. The court found that the defendant was in custody at the point that he was placed in the closed door interview room at the Sheriff's Department. The court found that there was no probable cause and to put him in custody and then also found that his this interview was not preceded by Miranda warnings. Um, the people are arguing that that the finding that he was in custody is erroneous as a matter of law and finding that there was no evidence presented at the hearing to support probable causes, manifestly erroneous. Uh, and three that there that no Miranda warnings were needed, uh, prior to the second interview. Looking at issue two first, which is a matter of custody. Uh, the reason this is erroneous as a matter of law is because, uh, the court, uh, applied a subjective, uh, test as to what the defendant reasonably reasonably believed and seemed to find the mere fact that the interview took place at to, uh, call this a custodial, uh, interview. Um, but, but according to Whittler, you know, defined that the place of the place, just the fact that, uh, an interview takes place at a police station, uh, is not sufficient because otherwise you'd have to have probable cause. Anytime you ask someone to come down to the police station for an interview, uh, the court, Whittler rejected that, uh, the court erred first in applying a subjective test. He said that he thought it was reasonable, uh, that, uh, the defendant found that the defendant thought he could not refuse to go with the officers. Uh, and it was reasonable for him to believe that he is objective. What a reasonable person innocent of any crime would have thought had they been in the defendant's shoes. Uh, now factors to be looked at when looking at whether a person is in custody is the time, location, length and mode of the of the interview. The number of officers present at the interrogation, uh, the presence of friends or family, the addition of any additional formal arrest, uh, the manner of arrival and the agent intelligence and mental makeup of the defendant. Um, applying this these facts in Milok, the Illinois Supreme Court found situations that was much more involved than our than the present facts. Uh, that that that particular defendant could not have thought he was. I mean, that the recent person in that defendant shoes would not have thought that he was under arrest in Milok. The facts were that there was an initial, uh, interview of the defendant at the police station. And then four days later, they went back and wanted to do another interview. Uh, the sense that he was not told by the officers that he did not have to accompany them. He didn't arrive at the station on his own power. Uh, he wrote in the back seat of the of the squad car, but it wasn't blocked and there were no handcuffs. Uh, his, uh, and he, uh, the question, the second questioning lasted two hours. He also volunteered to take a polygraph test, and then it was transportation by the police to the polygraph exam. And he was not given. He was given Miranda warnings, uh, either before the interview or or before the polygraph examiners. And he wasn't told he was free to leave until after he confessed to the polygraph exam. And under these circumstances, uh, the Illinois Supreme Court in Milok said that this defendant, uh, a reasonable defendant in this defendant's shoes would not have thought that they were under arrest. And in this case, our facts are much, uh, much better than the facts in Milok. Even this defendant is 38 years old. He's had 2.5 years of college. He testified at the suppression hearing that he agreed to accompany the officers to the station for the second interview. He also testified that he agreed to answer questions. Uh, there was no force, no showing authority other than that there were four officers there that asked him to come. But he he said that he did agree to him. He did say that, you know, that this that it scared him, but he did agree to go. Uh, and that fact that that stands, uh, he wasn't a handcuffed. He wasn't told he was under arrest. He rode in the front seat of investigator Cox car. Uh, and he was at the police station. He interview room that he was placed in was not blocked. You can look on the video. Uh, investigator comes and goes, and he doesn't have to ask to be let out. And there's no key. Uh, he was. There was only one officer present. Uh, and he wasn't. He wasn't yelled out. He was instead reassured that everything would be all right. It was. He was treated with great respect. He was given grapes, coffee and cigarettes. And under these circumstances, a reasonable person in his shoes would not have thought they were. So that finding of the courts manifestly erroneous. The, uh, I mean, erroneous as a matter of law, but furthermore, the finding of that there was no evidence of cost is manifestly erroneous. Uh, because, uh, and not conceiving that there was an arrest. I'm going to discuss facts known to the officers were such that a reasonably cautious person in their shoes would have thought that the arrestee had committed a crime. Uh, and the officer, uh, you know, and looking at problem cause, it doesn't have to be shown that the officer's belief is more likely true than false. It just you look at the facts known to the officer. Uh, uh, this is what was this was what came out at the, uh, in the in the second, the DVD of the second interview and the DVD of the first interview, which both exhibits were admitted into an evidence. So this is evidence that was before the court as well as what was as well as the testimony that was taken at the suppression hearing. Um, and this is what was shown to the officers. The crime scene had been, uh, analyzed for 24 hours and an autopsy had been made of Carmen Boyd, the murder victim. She was badly beaten. Uh, and her face was badly beaten. A tooth was knocked out. Um, her eyes were so swollen shut and she had been stabbed 27 times. Uh, there was blood of another individual, her attacker, their, uh, blood on the, uh, in the sink where the attacker tried to clean up blood on the door handle handprints where they where they left. Uh, there was a bloody rag and apparently toilet paper soaked with the attacker's blood. There was, uh, oh, and, uh, they knew that the blood and the DNA of the attack was at the scene. So they know that there's that the person that attacked, uh, Carmen Boyd had was cut and injured and was bleeding. Yeah. Was it was the blood with? Was there a DNA sample of that blood prior to the attack at the station? Or was it that they discover that after, you know, if, if they had done, if they had done DNA testing, I can't hear you. I'm sorry. All we know, all that I know from the record is that the killer's blood and DNA was present at the scene. What tests were done? You don't know if that match was made because of what they had on record or just from the person itself. There was no, I don't think that there was any comparison to this particular defendant at that point in time. Um, I don't think that he really had much of a record. I don't think he had much of a record. So, but all we know is that the murder murderers blood and DNA had been found at the scene. Okay. Uh, and what that amounts to. I don't Carmen had tried to defend herself. Go ahead. Thank you. Please. The court. My name is Lawrence. I mean, I represent Christopher David in this state appeal trial for suppressing statements of the second interrogation that occurred at the police station address. Briefly addressing counsel's argument regarding argument to counsel states that trial court's ruling was erroneous as a matter of law because the judge applied a subjective test. But the subjective, the trial court's ruling was not simply based upon what Mr McDade testified to that he believed that he had no choice but to go with the officers. That was not simply the judge's finding. In the order, the judge says the defendant's finding of fact, the defendant testified that when four officers came to his home, he did not feel that he could refuse to go with them to the sheriff's department. It was reasonable under all the circumstances for the defendant to believe he was in custody at the time. Was he given the option that he could come on, just come on down to the station, but he had no driver's license, right? Correct. Correct. The record does not reflect that the officers gave Mr McDade the option of arranging transportation. His mother was at home to come to the station later at a time convenient to him. And moreover, the officers did not give Mr McDade the option of having the second interrogation at his home. And so the judges ruling considered Mr McDade's subjective belief that he could not refuse the officer's command to go to station. But it's based upon all the facts and circumstances present, which is, which is an objective. Can you give me some in your mind? What distinguishes this case from Mila or Mila? Yes, Your Honor. Um, um, Mila, the officers asked to the police station with them to go with them here. Four officers returned to his home after the first interview conducted by two officers that the record shows that Officer Bay told Mr McDade, We need you to go to the station with us for another interview. It wasn't as a reasonable person would consider that statement. We need you to go to the station with us to be a command. And that's what Mr McDade testified to. And the judge found that it was reasonable. Secondly, and how is that different than in Mila? There was a big ask. Would you mind coming with this at the station? Is that the how it was phrased? Well, the kid, the kid says, ask, ask. You know, it certainly doesn't imply is isn't the same as we need you to come to the station for officers appearing in his home. We need you to go to the station. This is different than asking somebody to go to the station as far as considering, you know, whether the defendant reasonably believed he had the option of not going with it. You ask somebody, no, I don't want to go. You tell somebody we need you to come to the station. And I cited cases that say that language we need you to is a command. Would there be any difference if they said you need to go to the station rather than we need? No, no, the, uh, you know, the statement need is the important word that we need you to come with this. We need you to come with this means, you know, that is a command. So it wouldn't matter whether we need you to come to the station and you need to come to the station or whatever. Um, the important word is command. Uh, you know, we need you to come to the station, which courts have so that was one. That's one difference. And, uh, in the could I get one? Yes, sir. I know. In New York was that like eight hours later, he said it was over a long period of time. But now, in this case, it was like an hour and a half, right? That's that's correct. So are you making a distinction there on that? Well, is the totality of circumstances and time is the time is one factor of what a reasonable person would can, you know, whether he could turn that. Okay, so let's let's let's for a hypothetical that one officer leaves the room and another different officer comes in a room or leaves his house or comes in. Should they have re Miranda iced him? Well, that's that's arguing three. My argument here is yes. Every time you change people that somebody changed something, you have to remand eyes. Well, there's several factors to consider your honor and that whether the new set of Miranda warnings are required. Certainly one of the factors is whether the interrogator has changed from the 1st of the second interrogation. Officer Betty gave the Miranda in this person gave this form. We have a form sign beside it. Wasn't it officer paid one of the other officers that came back to talk? Yes. Yes. And didn't he say at the end of the first interview? Uh, didn't they ask him if he'd be willing to answer more questions? He said, He said, Feel free. He said, Feel free. That's correct, Your Honor. Now, it's for purposes of determining whether a new set of Miranda warnings needed to be administered. That does not feel free that I think that you can interpret that to mean that Mr McDavid think that the first interview and complete it. And so there's a break there. I would, you know, in other words, feel free. I would talk to you again. Another interrogation, you know, but this is this way. An officer also said at the end of that first interview, this break in a separation from the two. The one interview, one interrogation that requires, uh, the second administration Miranda. You don't have any problems about the Miranda's that were given the first time. Okay, so and that interview started about 4 55. Is that correct? And that interview ended at about 5 20. Is that correct? And then is it also correct that the, uh, interview with the police station actually commenced at 5 59 something correct? And there would only be then 40 minutes in between the actual ending of the first interview and the actual beginning of the second interview that actually occurred at the police station. That's correct. Now again, time is but one factor. Your honor mentioned another factor. The courts consider whether a second round of Miranda ones are required and a different interrogator a different location. The Miranda ones were given to Mr McDavid's home. The second interrogation occurred at the police station, a totally different setting again, breaking the first, separating the first interrogation from the second interrogation. Third, Mr McDavid. He was the officer 12 detective told him conducted the second interrogation. Did not remind Mr David McDavid of the Miranda warnings or tell them that they were that they were in effect. So you think there is a remindment has to go in effect? I think that we're in the warnings. I think that they have to take into consideration this. This fellow here apparently went to two years of a school or 2.5 years college and he was not a dummy. I think it's just it's one of the factors, your honor. One of the factors of the different interrogator. The other factor is it's a different location. The other factor was that there's no reminder. Another factor that courts consider is that Mr McDavid was not in the continuous custody of the officers. You know, again, if he was in continuous custody, I think that the argument will be stronger that the you know that there was no separation or break between the first interview and custody. Again, going towards in Mr McDavid's mind, a belief that the first interrogation had been completed and that the rights and the waiver that he had, um, that have been invested in the first, uh, warnings did not apply to carry it over to the second. So that's just all the factors. What case? What cases are you coming off of to this continuous custody? This is a new term. I haven't heard that. Um, is there? It's not in the Miranda case. Original. No, it's not in the Miranda. This is this is cases that analyze whether a second administration of Miranda warnings are required when courts are considering. But I don't know. Do you know? Does it says continuous custody? No, not continuous custody, your honor. But when I started cases, I don't know if it's Baltimore or the Roski or whatever it was. But those courts say, like, finding that Miranda warnings were not needed to be administered a second time when they talked about why one of the factors that had been mentioned, I believe, was that there was no, you know, Mr McDavid, the defendant was in the was with the presence of a police officer the whole time. You see? So that works against that. That's here. It was, um, I'd like to. So we have this, you know, the second issue about Mr David being in custody. The third issue about the need for the refreshing the Miranda warnings. I'd like to take the remainder of my time talking about issue number one, because, um, if that if in that issue, in that case, in that argument, um, the probable cause argument and the trial court found that this was reasonable for Mr McDavid to believe he was in custody before officers returned to his home and commanded in order to go to the police station for a second interrogation. Now, the trial judge and that there was no cause at that time. We have to limit ourselves to what the officers knew at that time, knew at the time that he was taken away from his home following the first interrogation. Thank you. Thank you. Performing uh, answer to when the officers returned to the officers were the same to ask the defendant to come for a second interview. Two of the officers were the same. Two of them were Inspector Todd and his partner. Uh, and what they knew they knew together at that point in time they knew about and all of their knowledge can be imputed to each other. They knew everything that I was saying about about proper cause and and and more. Um, they knew, for instance, that during the first interview, the defendant, uh, went in and and said, and you can see this on the video. Um, he he at the beginning of the interview, he calls out to his mom, his mom, what happened or where the scissor water where where the scissors and he leaves the camera view and then and he comes back and and a few and a little bit later he's asked, um, whether he has any injuries and he says, Yeah, I just just got myself now. This is with the scissors and that that shows, uh, motive to. I mean, he knew it was a motive to manufacture a false, innocent explanation for the cuts that he has. Uh, and the officers do look at those cuts. They and they know, uh, that the person that murdered Carmen will have had injuries cuts. So that has that adds into the issue of problem cause. They also knew that he had lied about things during that first interview. And and it can be gathered inferred that what he lied about was being with Carmen that night because at the beginning of the second interview, uh, Inspector Todd says, Look, I know you were with Carmen that night. So all these things add up to probable cause and they could have arrested him, but they did not at that point. What they did was they conferred with each other and then they came back to the house. And this is less than an hour after the other. The first interview has ended. They go back for officers, and that is the most that can be said. That was anything that was coercive is the presence of four officers. That's only one circumstance out of the totality of circumstances that this court should be looking at. Uh, and what they did was, you know, at the end of the first year, he indicated that Yeah, feel free. Come back. I'll answer more questions. Uh, so, you know, there's kind of a open invitation there. You know, you can come back and I will be willing to answer more questions. When they went back, they didn't want to upset the defendant with what they knew. They didn't want to upset him with the fact that they knew that he lied during that first interview. And so they one officer baby comes up with a little subterfuge. He says, Oh, we need you to come down for a second interview because the first video did not take or did not work. There's a problem with it. So we need to do a second interview and video it would. And it is a request. It is a request. It is not a command. It is not. We need you to come down. It was a request premised on a lie that the first interview did not report. But it was but but the point of it is not that they're trying to practice some kind of substitute subterfuge. It's that they don't want to put any pressure on the defendant to come down for a second interview other than we need to to to report it again. And so that circumstance, uh, does not show that he was in custody at the time that he was in the house. In fact, the court in this order does not find that he is in custody until he is seated in the closed door interview room. And this is in the court's order. So at this point, you know, there's no there's no arrest at this point. And the totality of the circumstances show a consensual, uh, uh, contact. The defendant agreed to go down and make a second interview to give a second statement. Now, as to the Miranda, uh, the court found that he was fully born and that he had had uh, fully waived his his rights. Uh, the defendant himself on one point in the first interview reads and says that he knows he can stop so we can